Good morning, Your Honor. May it please the Court. This circuit's extrinsic-intrinsic test for determining substantial similarity may be appropriate for literary and dramatic works, but it does not follow that this is appropriate for musical works. But counsel, you know, I don't want you to spend a lot of your time on this because even if you're correct, we as a panel have no authority to overrule circuit precedent because there's nothing from the Supreme Court or our cases that has undermined our precedent. Is there, there's, there's no authority under Miller v. Gammy for us to agree with you, right? Well, there is some, there are other judges in the circuit that do agree with me on this. I mean, in particular, the authors of the Swirsky opinion, Judge Canby and Chief Justice Thomas, they said- But you don't have a panel. You don't have a panel to say, well, how do we overrule a prior panel? Counsel, you might, you might have a judge who's dissented someplace, but that doesn't give us the right to overrule a prior panel. You can take that en banc if you want, but you can't, I don't see how you get to us and say that you, we have the right to overrule a prior panel, even if we thought the judge Canby and, or somebody else on the, on, on our court was right. Yeah, well, that was in the Swirsky case, but okay, so let me just jump to the next point is the deposit copy in this case was an mp3 recording. Okay, it was not sheet music, which makes this case different from the Skidmore versus Zeppelin case, and the Williams versus Gay case. Those were, that was sheet music. Here we have an mp3 recording. Now, our position is that a court should compare the two recordings, and not compare derivative sheet music made from the recordings. And it makes no sense to rely on derivative sheet music, as opposed to the music itself, because the sheet music actually confuses and obscures. So as our expert Judith Finnell wrote in her report, a jazzed-up version of Happy Birthday with extra notes and elongated notes would still be recognizable to an ordinary listener. Counselor, didn't Ms. Finnell rely on sheet music? Well, actually, she relied on both. She took the mp3. It's a simple question, counsel. Didn't she provide sheet music? She did provide sheet music. Okay, and are we supposed to, are you telling us now that we should ignore that? Well, I'm saying she provided sheet music, and the defense, Lawrence Ware... It was an error for the District Court to have looked at her sheet music. It was an error to... You provided it, you provided it, counsel, should you have struck and struck the sheet music. I'm just trying to figure out what your argument is. I'm a little puzzled. Well, my argument is the sheet music was used to describe the sounds, the music itself. And I thought that would be pretty standard procedure. It didn't strike me as unusual here that we would rely on sheet music. Well, that would be, but Ms. Finnell, she makes the point that some notes are more important than other notes, and that's why she brings up the Happy Birthday analogy, a jazzed-up version of it. You can add a lot of ornamental to the Happy Birthday. You can elongate certain notes, but an ordinary juror is going to think, well, it's just Happy Birthday in a different version. Counsel, here's a problem that I have with your argument on Ms. Finnell's report. Ms. Finnell said, and you repeat in the briefs, that Ms. Finnell repeatedly said that the two songs at issue are more similar to each other than to the prior art. But Ms. Finnell never filtered out the prior art, and that's the reason, as I understand it, that the district court struck her expert report, without which I don't see how you can win unless we find the district court abused the court's discretion. So explain to me why Ms. Finnell saying they're more similar to each other than the prior art is somehow the equivalent of filtering out the prior art, because I don't see you're connecting those dots in your brief, and I don't understand why they would be the same thing, or why filtering out the prior art isn't necessary. But why don't you help me with that? Well, we tried playing some of the music in court, but what we wanted to show was, if you play the songs on top of each other, there's something extra in Soque Nidor that's not in the prior art. And Ms. Finnell, actually, she didn't talk about the prior art in her report. It was just overlooked. But I don't see anywhere in either of her reports where she explicitly, she does discuss the prior art, including in the part that I quoted, but I don't see her anywhere, as the district court found, filtering out the prior art. And as I understand it, that's why the main reason the district court struck her report, although there are some other reasons. And I'd still like to hear why the district court was wrong, why she wasn't required, in your view, to explicitly filter out the prior art for her report to be admissible. Well, it goes back to my argument. I think the extrinsic-intrinsic test is just wrong. And I understand that this panel is going to have a her reports that there's no similarity between the two songs. And there clearly is. An ordinary listener hears the two songs, and the main part, the melody part, the part that people like the most, there's clearly a similarity. And this report goes on about all the other parts of the song that are not, that are not alike. But that's irrelevant. So there really is one. And they say, the defendants say, and Farrar says, there's only three notes in common. But there's more than that. And they say three notes in common. And Judith Finnell says, no, there's a lot more than three notes in common. But the reason the defendants say there's three notes in common is because they count an unimportant note. And they say, well, that breaks up the commonality. So Council, are you conceding that under the extrinsic test, the district court did not abuse its discretion in striking the Finnell report, and that the only way we could reverse on that ground is to overrule the extrinsic test? I think there's enough in the Finnell report for the district court to not have disregarded the Finnell report. I think there's enough in there. Although it wasn't very long, I think it was sufficient for that. But I'm also saying that the Farrar report was flawed as well, because it was just so extreme that Lawrence Farrar, he was similar. I get that there's a similarity in the songs to Danny Boy. We don't dispute that. But for someone to say there's no similarity at all just doesn't make sense. But going back to the, I think the district court focused too much on the sheet music, which in and of itself was a derivative work. The district court should have focused on the actual music and not the sheet music. Because when he's focused on the sheet music, that derivative work, that's when he was able to find some defendants. But if he didn't just focus on the music itself, then I think this is something that has to go to a jury. And it was a mistake to toss Mr. Finnell's report out. It was a mistake to grant summary judgment. And the district court, by the way, doesn't even acknowledge the happy birthday analogy. He says in his, he says in his, he says in, I'll tell you what he's, the district court judge writes, first, Finnell considers notes to be similar even when they appear in different places in songs' melodies. Second, Finnell opines that identical pitches found in succession in both songs are similarities, but then admits that there are intervening pitches between some of these notes. Again, there appears to be no justification for deeming notes to be consecutive when in fact there is an intervening note between them. And the judge just, he doesn't even discuss the happy birthday analogy. And that is the explanation for it. And if he didn't concentrate on the sheet music, but instead concentrating on the way the music sounded, then he wouldn't have been led astray by the errors that the sheet music brings. Oh, it's just up, it's just up to the jury to listen to it and then intuit that they're the similar or the same. Uh, yes, I, we found the, but the problem is, is that it's so similar to, to music that is prior art that goes back centuries. Are they supposed to separate that as well? Well, that's for the juror to listen to. And why didn't your expert do that? Well, our expert didn't listen to it. And she said that, um, there's enough, she said the different, there are some similarities, but she said they were different. Just trust me. Well, no, it should be a jury question. That's what it is. I think she put, the judge said, this is a battle of the dueling experts. And he was right. He said, when he came out, why isn't this just a battle of the dueling experts? And his first instinct was correct. It is. And those dueling experts should, you know, give testimony to a jury. And with that, I'd like to, uh, reserve the rest of my time. All right. Counsel, whenever you're ready. Thank you, your honors. Uh, Tal Dickstein of Loeb and Loeb. I represent the appellees, cross appellants defendants below. It's an honor to, to argue before you. Um, right at the top, I'd like to just address a couple of the arguments that Mr. Machat raised. Um, he, he mentioned that the defendants expert, Dr. Ferrara, you know, who's been cited by this court favorably at least two times, um, by district courts in this circuit, numerous times. Um, Mr. Machat mentioned that there were only three notes in common, according to Mr. Ferrara, Dr. Ferrara's report. Uh, that's not correct. Uh, there were three notes in sequence that are in common. And that's, what's critical here, because I think what, when you're comparing musical compositions, you have to look at, well, are there notes in sequence? We can't just take a note here and a note there, you know, and say, well, add them up and say that there's some, some substantial similarity here. So based on Dr. Ferrara's analysis, where he looks at, okay, which, which notes have the same pitch, meaning higher, low, and which have the same metric placement, meaning where they appear in composition. Uh, he says there are ultimately 20 notes in total that are in common between between the defendant's work, you raised me up, and the plaintiff's work, Dr. Thorne, and only three that are in sequence. Um, and that's significant because this court has held in the Newton versus Diamond case. And again, it reiterated the concept in the, uh, the Skidmore case, the Led Zeppelin case just last year, that a few notes, three or four notes that are common in the genre are not protectable. And so, so plaintiff's claim fails for that reason. In addition, as Dr. Ferrara shows, those same three notes appear in the prior art, in, in, in Danny Boy, the famous Irish folk song, which of course, we know that you raised me up drew on Irish influences. There was an Irish lead singer, there was an Irish backup singer, and had a bagpipe solo, uh, Irish lyricist as well. So, you know, you, you don't have to look too far to connect the dots to see where, where this music came from. Counsel, counsel, here's my problem with this whole case. You, you, we've got two experts, they're both qualified to testify, and the district court judge decides he's going to decide the case because he doesn't like the way the plaintiff's expert has fashioned her report. Why should we agree with that? Well, your honor, this court has made clear that there are certain threshold requirements that experts have to follow. They have to put forward reliable objective criteria, um, you know, that would be helpful to define their effect. That's from rule 702, the evidence rules, and here there are a number of errors that Ms. Fennell engaged in that render it unreliable. Ignoring metric placement, meaning where the notes appear in the composition. She even says at one point in her, in her criticism of Dr. Ferrara, the metric placement is important. Other courts within the circuit have said metric placement is important. Um, in fact, there was an issue of credibility, honestly. I mean, it seems to me that the only, the only central issue that the district court decided was, is that the plaintiff's expert did not identify and discuss and analyze the prior art. And I assume you'd agree with that, but is that fatal to her opinion? It is, your honor, because this court has explained that it's critical, I think that's the language of Skidmore, to filter out non-protectable elements as part of the extrinsic test, which this court has been applying in all manner of works, including music, over the last, last 40 years. Excuse me. Um, I believe that the court in Skidmore also said it's, quote, black letter law that a copyright owner can place no reliance on elements from the copyright law. Um, I think one step further, uh, if, even if the district court would not, did not exclude the plaintiff's expert, if the district judge accepted it and considered it, the case would still be appropriately dismissed for its summary judgment, because the, the similarities that Ms. Finnell finds, right, this supposed eight note similarity between the two songs, even though it's not really eight notes, it's only four and four, because, um, Sacrador has the additional C in the middle that's not present in You Raise Me Up. But even if, even if you take that eight notes, the same eight notes without the additional C, uh, that's found in Sacrador, those same eight notes are found in Danny Boy and its predecessor, London Derriere. Um, and so Ms. Finnell, you know, Mr. Machat and his client apparently never asked Ms. Finnell to say, hey, wait a minute, is this eight note sequence that you see here, is this found in the prior art? There's no analysis in her report to that effect. Counsel, I think that without the district courts, um, striking the report because of the failure to meaningfully address, uh, filtering out the prior art, this would, to me, at least be a very, difficult case on summary judgment to, to take two admissible reports and to say for the other reasons that you've given that no reasonable jury could conclude that there was a violation here. Um, so, uh, the, the, these other arguments, uh, strike me as, uh, uh, ultimately not, not ones that could be successful on summary judgment. Well, I understand that Judge Bennett. Um, we, we agree that the district judge, um, our position certainly is the district judge properly exercised his discretion in excluding, um, the plaintiff's expert because she failed to follow the extrinsic test. I would just note that there, there is a role for courts, you know, in assessing substantial similarity of copyrighted if two works clearly have no similarities, um, you're going to let that case go to a jury. I think then juries would be quite busy. Uh, although, although counsel to, to be fair to the plaintiff here, and I am surely not a musicologist, but I think it's pretty difficult to actually listen to these two songs and to say, uh, oh, there's no similarities there. Uh, I think that would be, uh, uh, uh, an enormous stretch. Uh, I mean, and that's without regard to whether they're also similar to Danny Boy or, or other heirs. But, uh, when you listen to the two songs, at least as a non-musicologist, it's hard not to see similarities. I understand that Judge Bennett. And I, and what I would, the way I would respond is, uh, Dr. Farrar, defendant's expert. He doesn't say that there are no similarities whatsoever, right? He said that there are no significant or no substantial similarities, um, you know, as guided by the prior art, right. Clearly where you have to filter out elements that are in the public domain. Um, I'd like to address just briefly the plaintiff's argument about the happy birthday example. Um, to the extent I understand what the argument is, is that there's a hypothetical jazz version of happy birthday, which someone might consider to be similar to the original non-jazz version of happy birthday. There are a number of problems with that argument as it applies here. First of all, there, there's no analysis or sample of this hypothetical jazz version that's been submitted to the court, no transcriptions, no recording of it. It's purely a hypothetical. So it's impossible to analyze how similar or dissimilar it might be to the original. Um, another problem with it is that in, in the plaintiff's papers, I think he makes the point that, uh, the one would recognize happy birthday based on the lyric, right? If you elongate happy, you would still recognize it as the word happy. In this case, the lyrics are completely different. I mean, the plaintiff's song is, first of all, it's in Icelandic language, um, which you raised me up is in English. Even if you translate them, there's, I think, two words, two sets of words that are in common. They're incredibly generic words, right? So the lyrics just have no, no similarity here. And so, you know, for all those reasons, the happy birthday example really doesn't hold up. Um, what I'd like to do your honors, uh, if I might, unless there are any other questions, I'd like to turn to our cross appeal on, um, the attorney's fees motion. And there, I think what the district court did, the district court did err in, as a matter of law, in explaining what the legal standard is for frivolousness. Of course, you know, under Fogarty and later Kurtz saying there are five factors that district courts, uh, analyze when deciding whether to shift attorney's fees. And one of those is frivolousness. And what the district court explained, um, in its, you know, pretty relatively short two page opinion is that claims have to be fantastic or delusional in order to find frivolousness. Now this court and Supreme court have explained that claims can be frivolous if they're clearly baseless, but not necessarily fantastic or delusional. It could be, it could be one or the other. That's the needs K versus Williams case of the Supreme court in 1989. How do you, even assuming that the district court's rhetorical flourishes with fantastic and delusional, uh, may have been a step too far and that baseless is sufficient. How do you find that it's baseless here? You know, I pulled up, I pulled up these recordings and I, I listened to them. I immediately hear the of course on the merits, which we've just, which you've just, um, you've moved off of is that I, I listened to both of these songs and I go, I go around whistling, uh, Londonderry air, uh, when I'm done. Um, but when I listened to them, I, I immediately, since I can immediately identify that commonality, how could we conclude that this is baseless? Why would that be clear? Why, why would that be error and abuse of discretion? Well, your honor, I think when you're filing a copyright infringement claim, you have to file, follow the law of the circuit that you're filing in as to what the elements are and what's required in order to prevail on a copyright infringement case. And as we've been discussing, uh, earlier in the argument, you have to filter out unprotectable elements. Um, the plaintiff knew, but you each provided well-qualified experts who each prepared reports that are beyond the ordinary capacity of this court and the district court, um, to do. And it, and it took, it took that kind of, it took that kind of expertise to figure out, uh, whether there was prior art or not. Um, so what, what, what are we supposed to do? How do we, how do we determine that this is baseless? Well, well, your honor, I don't think it can be that a plaintiff merely by the fact of them submitting an expert report, you know, makes their case not frivolous, right. Or objectively reasonable. I think, I think you have to take a look at what's in the expert report. And here, while I understand, you know, the nuances of musicology, um, you know, maybe in some cases they're best left to experts, but here the plaintiff and its counsel, all they had to do was ask Ms. Finnell, say, hey, you know, this eight notes that you're finding in common between Stock and Doerr and you raised me up, is that found in the prior art in, in London Derriere? And I would note that the plaintiff... Counsel, you may have addressed this in your briefs, I just don't remember, but is it your position that someone coming in saying these songs are similar, there's a test that's applicable in another circuit that would send this case to the jury? Uh, we know we have a problem under the extrinsic test, but we think that that, that extrinsic test should be overruled either by the Ninth Circuit itself or by the Supreme Court. Is that as a matter of law frivolous when someone comes into court and says, we understand that under this circuit's governing law, we might lose, but that law is wrong. Does that make it frivolous as a matter of law? I don't think so, your honor, but the problem is the plaintiff never made that district. This is something they've made up on appeal, uh, in order to, because they recognize they lose under the extrinsic test. So they're saying, well, let's apply the law of another circuit. And frankly, I would, I would also mention the way they describe this look and feel test or the ordinary observer test. That is not the law of the second circuit. The second circuit says that where there are elements of a, of a, of a copyrighted work, be it a composition or whatnot that are, that are not protectable, there's a more discerning observer test, right? And so there you do have to dissect and analyze what portions of the plaintiff's work are, are protectable or not protectable. And you can't consider the non-protectable works. There is language in second circuit law, uh, as to the total concept and feel, but then we explain this in our briefs that the, that language refers to when there's an argument that a selection and arrangement of itself protectable. Now there's, there's a district court recognized. I think the plaintiffs do not make any argument that they're the unprotectable elements here were somehow selected and arranged in a way that itself is original, uh, and unique. They really just look at random notes and say, well, this note is similar here. And this note is similar to that. There's no argument. There's no attempt even to say that they're similar. So I would, I would say that there really is not a law of any circuit where the plaintiff could prevail. Um, you know, and so saying, well, we were advocating for a change in the law. I don't think that makes it non-frivolous. Uh, I would also point out in the, in the time that I have left, that there are a number of reasons why the district court, uh, even beyond the legal error, why it abuses discretion in evaluating the Fogarty factors. And, you know, this court in the Glacier film versus Turchin case in 2018 did overturn, uh, the denial of an attorney's fee award where district court did not quote assess the particulars of the case, close quote, and they quote misapplied the factors in which it focused while emitting analysis of other factors that may counsel forward an award of fees. So let me just mention, um, the, the factors that we think that, you know, the district court ignored that certainly, uh, compel a conclusion that attorney's fees are warranted here. First of all, as I was explaining, the plaintiff knew for at least a put it in quotes as, as trying to make it pejorative, but the Norwegian, uh, performing rights society, Tono, I think it is wrote to the plaintiff and said, Hey, if you look at Danny boy, any similarity between sock in the door and you raised me up, it derives from that, from that, uh, public domain, um, folk song from, from Irish. Why don't you finish up council? Sure. Your honor. Um, the other, the other things that the plaintiff did, which, you know, his case objectively unreasonable, if not frivolous, it asserted a claim to the lyrics, um, of sock and door, which it admits. All right. Thank you. Council. I think we have, uh, your argument, uh, Mr. Michotte, you have some time left. Thank you. Um, so I just like to going back to, um, back, back 10, over 10 years ago, um, when, um, when, uh, when they had this dispute overseas, uh, my client did actually have an English musicologist who gave a favorable report. He had a UK attorney ready to file in the UK, 2008 came and there was a global recession and the whole source of the financing just dried up, but the fight continued. So just because Tono said something different didn't mean that Tono was right. Uh, we maintain that Tono was wrong and, uh, he did have the backing of an English solicitor and he had also, um, UK musicologist. Now, when we ended up filing the case in the U S we decided, well, let's get a local musicologist. And we found, uh, Judith now, um, uh, and, uh, so let me, I like to return back to listening to looking at the notes, um, by transcribing, by taking a musical work and turning it into sheet music and then making the decision based on the number of notes in common on the sheet music, it just invites error. It's almost like looking at two sculptures and then making, describing the two sculptures and then seeing the written description of the two sculptures are the same. I think that's just the wrong way to do it. Um, so I realized we can't get at this panel, cannot overrule the tests that I like it to overrule, but we do have, um, the law of the circuit is you have to look at the deposit copy and the bottom line is this court, uh, sorry, the court below did not concentrate on the sheet music. And that's what led to the error. Um, also, um, um, Mr. Dickstein mentioned happy birthday in the, in the lyrics, that jazz version of happy birthday doesn't rely on the lyrics. You can still play a jazz version of happy birthday without lyrics. And an ordinary listener will recognize that to be happy birthday lyrics are irrelevant. And my client never even the judge's order, it says when it's first pages of the order, it says, you notice the complaint. We never claimed copyright in the lyrics. We only brought up the lyrics to show the overall similarity. And that, that was it. And then when the defense expert said, there's no similarity at all in the lyrics. And we said, well, the theme of the song, and then they even denied there was any similarity in the theme of the song. Everything was just such an extreme. If you ask Lawrence Ferrer, if the, if the grass is green and the sky is blue, he'd say, no, well, you know, the grass looks Brown to me and the sky is cloudy. He wouldn't, he would not admit to anything. And since it's just to claim that there's no similarity in the songs, it's just, just preposterous. He claims it's just a tiny bit, but there really is a lot. And he uses the other parts of the song that are irrelevant to claim there's no similarity. And so Lawrence Ferrer is not credible as an expert. And I think it would have been preferable for the judge to toss both expert reports out and say, well, okay, I don't like the way Judith Finnell did her report, but I'm not buying everything that Lawrence Ferrer has written his report. And this really is a battle for a battle of the dueling experts. And I'm just going to let the juries decide. And I guess with that, I, I would just request that this court reverse the district court and with instructions to set this for a jury trial. You would concede though, that Mr. Ferrer is, is qualified. Oh yes, he is qualified. He needs to be cross-examined. There was no cross-examination, by the way. And I'd like to cross-examine him before a jury, but I haven't had the opportunity to do so. Thank you. All right. We thank counsel for their arguments and the case just argued will be submitted.
judges: BYBEE, BENNETT, Bataillon